# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **TERENCE WINBOURNE, ET AL.** | **CASE NO. 3:18-CV-01177** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **WILSHIRE INSURANCE COMPANY** | **MAG. JUDGE KAREN L. HAYES** |

## RULING ON MOTION FOR SUMMARY JUDGMENT

Pending here is Defendant Wilshire Insurance Company's ("Wilshire") Motion for Summary Judgment [Doc. No. 20]. Plaintiffs Terence Winborne[1] ("Winborne") and David Steve Carroll ("Carroll") have not filed an opposition.

For the following reasons, the Court GRANTS Wilshire's Motion for Summary Judgment.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

This litigation arises out of a fire that occurred at 213 Newton Street, St. Joseph, Louisiana, on July 19, 2017. Plaintiffs Winborne and Carroll d/b/a The Daiquiri Shack filed suit against Wilshire on August 10, 2018, in the Sixth Judicial District Court for the Parish of Tensas, State of Louisiana. On September 7, 2018, the suit was removed to this Court.

Plaintiffs seek contractual damages along with bad faith, interest, penalties, and other alleged damages pursuant to a policy of insurance issued by Wilshire covering property that was destroyed by the fire. Wilshire, on the other hand, contends it has no duty to pay Plaintiffs any amount under the policy because Plaintiffs failed to cooperate in the investigation of the claim.

---

[1] Plaintiff's name in the caption of this litigation is incorrectly spelled "Winbourne." The correct spelling is "Winborne."

Moreover, Wilshire contends it has numerous good faith bases for denial of the claim and is, therefore, not liable for bad faith penalties and interest.

Wilshire received notice of the loss on July 21, 2017, and retained Brush Country Claims for damage assessment. In addition, S.C. Fire Consulting ("S.C. Fire") was retained to conduct a fire cause and origin investigation. S.C. Fire conducted a scene inspection on July 24, 2017. [Doc. No. 20-9]. The fire investigator noted that vacancy at the time of the loss was an issue. His report states that the building was vacant and the contents on the interior were minimal and "not sufficient for an operational business." [Doc. No. 20-10, p. 2].

The fire investigator also reported to Wilshire that the insured, Winborne, informed him the building was owned by Winborne and Carroll and used as a rental property. Winborne reported that the property had been vacant since April 2017, over a month before the policy was issued on May 15, 2017, and three months prior to the loss, and the prior tenant still owed rent. [Doc. No. 20-10, p. 4].

On July 25, 2017, S.C. Fire verbally reported to Wilshire that the fire appeared to have been intentionally set. The investigator noted that the fire had three separate and unconnected areas of origin and appeared to be incendiary in origin, indicative of arson. Samples of debris were taken, which later revealed the presence of ignitable liquid accelerant. The fire investigator's written report to Wilshire notes, "The events bringing ignition and fuel together were a person intentionally setting a fire in three separate locations." [Doc. No. 20-10, p. 5].

Winborne told the investigator that, on the day of the fire, he hired Billy Boyte and Caleb Waller to work in the building. [Doc. No. 20-10, p.4]. Billy Boyte was arrested for arson on August 1, 2017. [Doc. No. 20-8, p. 2]. Caleb Waller and Winborne were subsequently arrested and charged with conspiracy to commit arson. [Doc. No. 20-2, p. 4].

In addition to the above report from the fire investigator, Brush Country Claims' adjuster reported to Wilshire that during his inspection on July 22, 2017, he noticed signs of arson, and noted that the building appeared to be vacant, and the vacancy exclusion may apply. [Doc. No. 20-9, p. 1].

Wilshire representatives attempted to contact the insureds to obtain statements numerous times, to no avail. Further investigation revealed that Winborne was not listed on the deed for the property. Wilshire then attempted to contact Winborne to obtain documentation proving he was the owner of the property, but Winborne failed to respond. [Doc. No. 20-6, p.1] Subsequently, Wilshire requested that Winborne provide a sworn statement in connection with the claim. [Doc. No. 20-12]. Winborne did not provide the requested information or documentation, nor did he submit a sworn statement. *Id*.

When Winborne failed to respond to Wilshire's requests for documentation and a recorded statement, Wilshire retained Jeffrey Rapattoni, Esq., of Marshall Dennehey to conduct "Examinations Under Oath." Rapattoni requested that the insureds appear for Examinations Under Oath via letters that were sent to both Plaintiffs, Winborne and Carroll, via regular mail and certified mail on January 24, 2018; February 16, 2018; March 16, 2018; April 11, 2018. [Doc. No. 20-6] None of the mail was returned as undeliverable. Neither insured responded to the requests for Examinations Under Oath. *Id*.

Wilshire learned that an attorney was retained to represent the insureds and Winborne's Examination Under Oath was scheduled through the attorney to take place on September 11, 2018, a date mutually convenient and selected by all parties. *Id*. The examination was cancelled by Winborne's attorney and re-scheduled for November 26, 2018. *Id*. Winborne failed to appear

on November 26, 2018. *Id*. In addition, the second named Plaintiff and insured, Carroll, has never responded to Wilshire's requests. *Id*.

To date, both Plaintiffs have failed to cooperate in Wilshire's efforts to investigate this claim. Wilshire's requests and Plaintiffs' failure to cooperate in the investigation span more than a year.

Wilshire contends that it has been materially prejudiced by the Plaintiffs' failure to cooperate and that it has been unable to investigate numerous issues related to the claim such as:

1) whether one or both Plaintiffs have an insurable interest in the property;

2) whether the property was vacant for 60 days prior to the fire, excluding coverage;

3) whether the property was vacant at the time the application was signed, excluding coverage;

4) whether Plaintiffs misrepresented material facts to Wilshire regarding the property at the time of the application for insurance;

5) whether Plaintiffs are associated with the individuals arrested for and charged with arson (one of the named insured Plaintiffs has been charged in connection with the fire); and

6) whether Plaintiffs have a financial motive to commit arson.

In addition, Wilshire alleges that it has incurred a significant expense in its efforts to investigate the claim, including fees paid to outside adjusters, fire investigators, and attorneys hired to attempt to secure Plaintiffs' cooperation in regard to the investigation. Wilshire contends that it is, therefore, entitled to summary judgment denying Plaintiffs' claims for contractual damages along with bad faith, interest, penalties, and other alleged damages, and dismissing Plaintiffs' suit with prejudice due to the Plaintiff's failure to cooperate, as required by the policy and Louisiana law.

Finally, Wilshire contends that it is entitled to summary judgment dismissing Plaintiffs claim for damages for Wilshire's alleged failure to make payments to a mortgagee. [Doc. No. 1-2, p. 4]. Wilshire asserts that the allegations do not distinguish which petitioner, Winborne or Carroll, incurred these alleged damages. Further, neither insured ever provided any lienholder/mortgage information to Wilshire at any time, including at the time of the application and after the loss. Therefore, Wilshire asserts it is not liable to pay a mortgagee and cannot be liable for any failure of the Plaintiffs to pay a mortgagee.

## II. LAW AND ANALYSIS

### A. Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving

party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson*, 477 U.S. at 248.)

Failure to file an opposition and statement of contested material facts requires the Court to deem the movant's statements of uncontested material facts admitted for purposes of the motion. *Local Rule, LR 56.2W.*

B. Analysis

1. **Failure to Cooperate**

Wilshire first contends that its policy does not afford coverage for Plaintiffs' damages caused by the fire because of Plaintiffs' failure to cooperate, which violates a condition of the policy.

Under Louisiana law, "[a]n insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *Vanderbrookv. Unitrin Preferred Ins. Co. (In re Katrina Canal Breaches Litig.),* 495 F.3d 191, 206 (5th Cir. 2007) *(citing Cadwallader v. Allstate Ins. Co.,* 848 So. 2d 577, 580 (La. 2003)). The words of a contract must be given their generally prevailing meaning. LA. C.C. art. 2047; *see also Cadwallader,* 848 So. 2d at 580. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA. C.C. art. 2046. If the policy wording at issue is clear and

unambiguously expresses the parties' intent, the insurance contract must be enforced as written. *Vanderbrook,* 495 F.3d at 207.

Furthermore, compliance with insurance policy provisions is a condition that must be met in order for an insured to proceed with a suit against the insurer. *Mosadegh v. State Farm Fire & Cas. Co.,* No. 07-4427, 2008 WL 4544361, *3 (E.D. La. Oct. 8, 2008), *affd,* 330 Fed. App'x 65 (5th Cir. 2009) *(citing Lee v. United Fire & Casualty Co.,* 607 So. 2d 685, 688 (La. App. 4 Cir. 1992)). Failure to comply with the policy provisions may manifest itself in several different ways, including "a <u>refusal to submit to an examination under oath</u> or a refusal to produce documents," which is also known as a refusal to cooperate. *Id* at 10 (emphasis supplied).

Here, Wilshire issued a policy to Plaintiffs which included the following language:

> **3  Duties in the Event of Loss or damage**
>
> a.  You must see that the following are done in the event of loss or damage to Covered Property:
>
> (8)  Cooperate with us in the investigation or settlement of the claim.
>
> b.  We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonable required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.
> [Doc. No. 20-4]

The undisputed facts show that Wilshire and its representatives have requested that Plaintiffs provide information, sworn statements, and examinations under oath on multiple occasions, and they have failed to do so.

Plaintiffs' refusal to cooperate in submitting to Examinations Under Oath renders them in violation of the "Duties After Loss" clearly enumerated in the contract/policy. As noted by one

Louisiana Court, "[a]n outright refusal to an examination is an easy case" of breach. *Lee v. United Fire & Cas. Co.,* 607 So.2d 685, 688 (La. Ct. App. 1992).

Courts have found that an insurer is materially prejudiced when an insurer is "deprived... of the right to properly and thoroughly investigate the claim" resulting from a failure to cooperate on the part of the insured where the insurer has shown a diligent effort to obtain the information requested. *Beasley v. GeoVera Specialty Ins. Co.,* No. 13-395, 2015 WL 2372328, *3 (E.D. La. May 15, 2015) *(citing Kerr v. State Farm Fire & Cas. Co.,* 934 F. Supp. 2d 853, 861 (M.D. La. 2012)); *see also Nat'l Union Fire Ins. Co. v. Cagle,* 68 F.3d 905, 912 (5th Cir. 1995).

All experts that have examined the evidence have concluded that the subject fire was incendiary in origin/arson. Further, multiple arrests have been made for arson and conspiracy to commit arson related to this loss. The combination of the expert opinions, along with all of the other evidence gathered in connection with the fire, led Wilshire to believe that the fire may have been intentionally caused by one or both of the Plaintiffs and, thus, warranted further investigation requiring Plaintiffs' cooperation.

Wilshire has been prejudiced by the insureds' failure to cooperate in its investigation of the arson. Arson by an insured has long been recognized by Louisiana courts as a coverage defense in claims for losses due to fire. In order to prove that damages due to fire are not covered because of arson, an insurer must prove that 1) the fire was incendiary in origin, and that 2) the insured was responsible for it. *Del-Remy Corp. v. Lafayette Ins. Co.,* 616 So. 2d 231, 233 (La. App. 5 Cir. 1993) *(quoting Rist v. Commercial Union Insurance Company,* 376 So. 2d 113 (La. 1979). However, "[a] motive [on the part of the insured], plus the incendiary origin of the fire, would, in the absence of believable rebuttal evidence, be sufficient to sustain the affirmative

defense [of arson] pleaded by the insurer." *Ashworth v. State Farm Fire & Cas. Co.,* 738 F. Supp. 1032, 1032 (W.D. La. 1990) *(*quoting *Sumrall v. Providence Washington Insurance Co.,* 221 La. 633, 60 So. 2d 68 (1952)).

Inasmuch as Wilshire suspected several potential coverage issues resulting from arson, vacancy, misrepresentation, and lack of insurable interest, Wilshire required vital and pertinent information and documents from Plaintiffs relating to their finances, relationship to the arson suspect, and ownership and occupancy of the subject property in order to perform a thorough and complete investigation. However, Plaintiffs refused to submit to an Examination under Oath wherein Wilshire could investigate the issues, and as a result, its investigation was impeded. Thus, Plaintiffs' actions deprived Wilshire of the right to properly and thoroughly investigate the claim. *Beasley,* 2015 WL 2372328, at * 14.

Because Wilshire was denied access to this information, its investigation was materially prejudiced, including, but not limited to:

    a. Financial Information

An insurer need only show that an insured had a motive in starting the fire, as opposed to direct evidence proving an individual or individuals was responsible. *See, e.g. Ashworth v. State Farm Fire & Cas. Co.,* 738 F. Supp. 1032, 1032 (W.D. La. 1990) ("[a] motive [on the part of the insured], plus the incendiary origin of the fire, would, in the absence of believable rebuttal evidence, be sufficient to sustain the affirmative defense [of arson] pleaded by the insurer.").

The most common type of motive that courts consider related to an arson defense is a financial one--whether the insureds had financial difficulties at the time of the fire. *Dawson v. Miller,* 594 So. 2d 970, 972 (La. App. 3 Cir. 1992) (insured "needed money"); *Briggs v. New Hampshire Indem. Co.,* 579 So. 2d 1221, 1223 (La. App. 3 Cir. May 22, 1991) (insured's mother,

9

who was a source of substantial income, died); *Rist v. Commercial Union Ins. Co.,* 376 So. 2d 113, 114 (La. January 1, 1979) (insured was bankrupt and had bad credit rating).

        b. Vacancy and Material Misrepresentation Regarding Condition of the Property

Winborne reported to the fire investigator that the property had been vacant since April 2017, three months (90 days) before the loss. S.C. Fire noted that the property appeared vacant. This was confirmed by the Brush Country Claims adjuster, who inspected the property and informed Wilshire that the property appeared to have been vacant at the time of loss. Vacancy can lead to arson and is excluded under the contract/policy.

        c. Insurable Interest

The subject policy was issued to named insureds "Terrence Winborne and David Steve Carroll d/b/a The Daiquiri Shack." Public land records indicate the property is owned only by Carroll. [Doc. No. 20-8, p.2]. Consequently, if Winborne had no ownership interest, his interest in the property would need to be demonstrated by a lease or other arrangement showing that he has an insurable interest in the damaged property. Without an interest in the property, he is not entitled to recover under the policy.

Wilshire requested information regarding Winborne's insurable interest, and Plaintiffs have failed to provide the requested information. Moreover, the loss occurred over 1½ years ago. Plaintiffs have handcuffed the investigation, but Wilshire is now subject to litigation and must defend allegations of bad faith and damages while still being unable to investigate even the most basic issues related to the property and fire.

A failure to cooperate precludes recovery when the insured engages in a "protracted, willful, and apparently bad faith refusal" to comply with a cooperation clause. *Southern Fidelity Ins. Co. v. Martin*, No. 13-0496, 2013 WL 6665579, at *8 (E.D. La. Dec. 17, 2013) (citing *Lee v.*

*United Fire & Casualty Co.,* 607 So. 685 (La. App. 4th Cir. 1992)). In *Lee*, although the insured appeared for a "sworn statement" he "refused to furnish any financial information." *Id*. at 685. The Court held that such behavior constituted a "protracted, willful, and apparently bad faith refusal to furnish information and documents." *Id* at 687.

Here, there is no genuine issue of material fact that Plaintiffs have engaged in a "protracted, willful, and apparently bad faith refusal" to cooperate in the investigation or settlement of the claim, in violation of the express terms of the policy. Accordingly, this failure to cooperate precludes Plaintiffs' recovery of any policy proceeds, and Wilshire is entitled to summary judgment dismissing Plaintiffs' claims.

### 3. Plaintiffs' Bad Faith Claims

Plaintiffs have pled that Wilshire owes them "bad faith" damages. The two Louisiana statutes applicable when analyzing a claim for bad faith against an insurer are, LA. R.S. § 22:1973 and LA. R.S. § 22:1892. LA. R.S. § 22:1973(A) provides that "an insurer [] owes to its insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach." Further, LA. R.S. § 22:1973(B)(5) provides that an insurer is in breach of the duties imposed by Subsection A if an insurer knowingly failed "to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant **when such failure *is* arbitrary, capricious, or without probable cause."** (emphasis added).

To prevail under LA R.S. § 22:1892(B)(l ), the claimant must establish that the insurer received satisfactory proof of loss, failed to pay the claim within the applicable statutory period,

11

and that the failure to timely tender a reasonable amount was ***arbitrary and capricious.*** *Cooper v. Farmers Ins. Exch.,* 210 So. 3d 829, 832 (La. App. 2 Cir. 11/23/16) (emphasis added). When the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense, the statutory penalties for bad faith are not permitted. *Reed v. State Farm Mut. Auto. Ins. Co.,* 857 So. 2d 1012, 1021 (La. 10/21/03) (citing *Rudloff v. Louisiana Health Services and Indemnity Co.,* 385 So. 2d 767, 771 (La. 1980)). Further, "[e]specially when there is a reasonable and legitimate question as to the extent and causation of a claim, bad faith should not be inferred from an insurer's failure to pay within the statutory time limits when such reasonable doubts exist." *Id.*

In the instant matter, Wilshire has a good-faith basis for denying payment to Plaintiffs. Wilshire has attempted to gather the facts necessary to make an evaluation of Plaintiffs' claim by sending adjusters, investigators and experts to Plaintiffs' loss premises shortly after being notified of the fire in order to evaluate the liability, extent, amount and cause for the damage to the property, determine coverage, and requesting examinations under oath of the insureds and documents supporting Plaintiffs' claim. Plaintiffs have failed to cooperate in the investigation or provide the requested information.

Therefore, Wilshire is entitled to summary judgment denying Plaintiff's claim for damages based on Wilshire's alleged bad faith for failing to pay the claim.

### 4. Duty to Pay Mortgagee

Plaintiffs have alleged that Wilshire failed to pay a mortgage on the property, causing further damage to Plaintiffs. However, there is no mortgagee listed on the Policy, nor is there any mortgagee identified in the application for insurance; therefore, Wilshire has no obligation to pay

a mortgagee under the Policy and cannot be liable for any damages arising out of the non-payment of any alleged mortgage.

Wilshire has no information about the holder of the alleged mortgage, the amount of the mortgage, which of the insureds took the alleged mortgage and when. Further, Plaintiffs' failure to cooperate in Wilshire's investigation has prevented them from investigating the existence of any alleged mortgages.

Therefore, pursuant to the plain terms of the policy, Wilshire is entitled to judgment as a matter of law denying Plaintiffs' claim for damages based on Wilshire's alleged failure to pay a mortgagee for which it has no information.

## III.  CONCLUSION

For the foregoing reasons, Wilshire's Motion for Summary Judgment [Doc. No. 20] is GRANTED.  Plaintiffs' claims are DISMISSED WITH PREJUDICE in their entirety.

MONROE, LOUISIANA, this 18th day of April, 2019.

_____
**TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE**